UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MARTHA AINSWORTH                                                                              PLAINTIFF

V.                                                                    CIVIL ACTION NO. 3:09cv68-DPJ-JCS

PATRICIA GILDEA, ET AL.                                                                    DEFENDANTS

ORDER

This alienation of affections case is before the court on seven in-limine motions filed by Defendant Patricia Gildea [69, 70, 71, 72, 73, 74 and 89]. The Court has considered the parties' submissions, the applicable law, and documents submitted for in camera review. The Court finds as follows.

Plaintiff Martha Ainsworth was married to Victor McLendon in June 1974. In September 2005, Plaintiff learned of McLendon's affair with Gildea. Plaintiff filed for divorce in December 2005 and then remarried. After the divorce was final, Ainsworth sued Gildea and Gildea's parents—who were later dismissed—seeking damages for alienation of affections. The matter is set for trial later this month, and Gildea urges the exclusion of a wide variety of evidence.

**I.      Standard**

The Fifth Circuit Court of Appeals has observed:

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (citation and quotation omitted).

## II. Analysis

### A. Motion in Limine Concerning References to Sexual and/or Intimate Encounters Between Defendant Patricia Gildea and Victor McClendon [69]

Gildea admits her affair with McLendon and therefore contends that details of the couple's sexual relations would be irrelevant, commutative, confusing and prejudicial. *See* Fed. R. Evid. 402, 403. She further contends that various notes and letters she sent to McLendon should be excluded for the same reasons.

To prevail at trial, Ainsworth must prove "(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss." *Fitch v. Valentine*, 959 So. 2d 1012, 1025 (Miss. 2007) (citations omitted). The Mississippi Supreme Court has recognized that "persuasion, enticement, or inducement which causes or contributes to the abandonment is a necessary component of 'wrongful conduct.'" *Id.* Therefore, in order to maintain [an alienation of affections] action it must be established that the husband was induced to abandon the wife by some active interference on the part of the defendant. *Children's Med. Gp. v. Phillips*, 940 So. 2d 931, 934 (Miss. 2006). Ainsworth hopes to demonstrate "wrongful conduct" with proof suggesting that Gildea used sex and money to induce McLendon to end his marriage. She therefore argues that the details of the Gildea/McLendon relationship are relevant to each essential element of her claim.

Ainsworth is correct. The sexual nature of Gildea's relationship with McLendon is highly probative of whether she persuaded, enticed, or induced the separation. The information is also relevant to causation. Both are essential elements of Ainsworth's claim. But mere probative value is not sufficient to overcome Rule 403. Gildea contends that even if relevant, the information is prejudicial, cumulative, and confusing. First, while the evidence may be

prejudicial to Gildea's case, Rule 403 addresses "unfair prejudice." There is nothing unfair about evidence suggesting that Gildea enticed McLendon to abandon his marriage.[1] Second, the unique elements of an alienation of affections claim foreclose any argument that the information is commutative. The persistent nature of Gildea's communications with McLendon is probative of the persuasion or enticement Ainsworth must prove. Third, the evidence is not confusing.

These issues are better focused when viewed in light of the exhibits. Gildea presented a binder for in camera review containing 15 exhibits she seeks to exclude by this motion. Ainsworth then narrowed the scope of the dispute conceding that she will not offer documents P-625; 646–48; and P-656. Pl.'s Resp. [94], at 2. The remaining, disputed exhibits are communications from Gildea to McLendon, many of which discuss the couple's sexual experiences and Gildea's desire for future rendezvous. The number of communications Gildea sent and their content are probative of the "wrongful conduct" and causation elements of Ainsworth's claim. This probative value is not substantially outweighed by the risk of unfair prejudice, confusion or delay.

While the content of the exhibits and their number are not sufficient to justify granting this motion in limine, a point may exist at which testimonial evidence could trigger Rule 403. Without knowing the precise nature of the testimony, it is impossible to draw the line between admissible and inadmissible evidence. But Ainsworth is cautioned to focus on the elements of her claim and avoid attempting to inflame the jury with lurid details of sexual acts. The motion is granted to this limited extent and otherwise denied.

---

[1] It seems the ultimate issue will be whether Gildea knew about McLendon's marriage and attempted to persuade him to leave Ainsworth. This is a question of fact for which the Court makes no determination.

**B.     Motion In Limine Concerning References to the Defendant's Conduct and Relationship with Victor McLendon Following the Plaintiff's Marital Separation [70]**

Gildea contends that Rules 402 and 403 preclude evidence of her relationship after McLendon and Ainsworth separated in November 2005. Gildea claims to have ended the affair when she learned McLendon was separated but resumed the relationship when Ainsworth would not take him back. This argument merely raises questions of fact as to Gildea's knowledge, what happened between Ainsworth and McLendon, and how the resumed relationship affected efforts for reconciliation prior to divorce. Gildea's conduct before McLendon's divorce is also probative of the elements of an alienation of affections claim. The probative value of the evidence is not substantially outweighed by unfair prejudice. The motion is denied.

**C.     Motion In Limine Concerning References to the Defendant's and Her Family's Finances, Investments, and Contributions [71]**

Gildea contends that Rules 402 and 403 preclude the admission of evidence related to her family's finances. But again, Ainsworth must prove enticement, and she contends that Gildea used her wealth—or that of her family—to entice McLendon, who was facing money issues. Plus, Gildea invested in McLendon's business. All of this makes Gildea's wealth, or access to it, sufficiently probative to withstand balancing under Rule 403. Ainsworth will be allowed to introduce evidence of investments or other monetary enticements Gildea offered to McLendon and evidence of Gildea's use of her family resources to entice McLendon (if any such evidence exists). But Ainsworth is precluded during the liability phase of the trial from offering evidence related to Gildea's net worth, and that of her family, because the risk of unfair prejudice would

substantially outweigh whatever probative value exists.  The motion is granted to this limited extent and otherwise denied.[2]

### D. Motion In Limine Concerning References to the Defendant's Marriage and Children [72]

During the course of her affair with McLendon, Gildea remained married with children. She now claims that evidence of her family is not relevant and would unfairly prejudice the jury. Fed. R. Evid. 402, 403.  Evidence of Gildea's husband is inextricably linked to other evidence in this case and appears necessary to put written communications in context.  For this reason, the mere fact that Gildea was married is not substantially outweighed by unfair prejudice. Ainsworth may not, however, use Gildea's marriage to assail her character.  Fed. R. Evid. 404(a)– (b); 403.

As for the children, Ainsworth suggests that Gildea's status as a mother engaged in an extra-marital affair bears on her truthfulness and is fair game on cross examination under Rule 608(b).[3]  To begin, specific-instances evidence must be "'clearly probative of truthfulness or untruthfulness,' such as perjury, fraud, swindling, forgery, bribery, and embezzlement."  *United*

---

[2]The Court anticipates that this aspect of the Order may require fine-tuning as additional facts are revealed at trial.

[3]The rule states:

> Specific instances of conduct.  Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, . . . may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

5

*States v. Tomblin,* 46 F.3d 1369, 1389 (5th Cir. 1995). Here, it appears that Gildea openly discussed the affair with her husband. This would not suggest a lack of truthfulness. That she may have elected to hide the affair from her children is understandable and not sufficiently linked to truthfulness to invoke Rule 608(b). Even if Rule 608(b) would allow Ainsworth to question Gildea about her children on cross examination, Rule 403 still applies, and the existence of children is substantially more prejudicial than probative. The Court has seen references to the children in some exhibits, but has not attempted to comb through the entire record for this information. Any reference to, or depiction of, children should be removed or redacted. The motion is granted in part and denied in part.

      **E.**      **Motion In Limine Concerning References to Purported Electronic Documents that Lack Indicia of Authenticity [73]**

Gildea attempts to block admission of various computer-generated documents for lack of indicia of authenticity. She suggests that the documents lack internet host date-time stamps, URL addresses, and/or http addresses. Some of the documents contain such information, and Rule 1001(3) provides a fairly easy path to admission with the proper witness. But if the parties cannot stipulate as to authenticity, then this motion is granted until the offering party authenticates the document.

      **F.**      **Motion In Limine Concerning Documents Referenced by General Categories [74]**

Gildea seeks to exclude certain exhibits because they were not bates numbered and were produced without sufficient organization. But Gildea never objected to the production under Rule 34(a)(B)(2)(E) of the Federal Rules of Civil Procedure, and the lack of bates numbers or poor organization does not render the exhibits inadmissible under Federal Rules of Evidence 402

or 403. Moreover, Ainsworth numbered the documents after Gildea's motion and sufficiently before the trial to remove any prejudice. Gildea also suggests that the documents have not been authenticated. The documents are not, for the most part, self-authenticating. Thus, if the parties cannot consent, then they must spend the extra time at trial authenticating documents through competent witnesses. The motion is granted to this extent until the exhibits are authenticated.

Gildea further argues that the documents are inadmissible because they merely prove an affair she has already admitted. This portion of the motion seems to track the motion discussed above in section II (A). But Gildea delivered a separate binder containing 56 additional exhibits she seeks to exclude pursuant to this motion. Ainsworth's Response [93] summarizes these exhibits, links them to bates numbers, and concedes that she will not offer 34 of the objected-to exhibits either in whole or in part. The Court has reviewed the remaining exhibits in camera and concludes that most are relevant to the essential elements of Ainsworth's claim for the reasons previously stated. Regardless, most of the disputed exhibits are not sufficiently prejudicial to warrant an in-limine order.

There are, however, exhibits that appear to depict children. *See*, *e.g*,. Tab 43 at P-902; Tab 56. If these are Gildea's children, then they are inadmissible. Other photographs may depict marital pictures of Gildea and her husband. The fact that Gildea was married is relevant, but photographs of the husband are not. Finally, some photographs are too faint to determine whether they violate other portions of this order. The parties are instructed to review the disputed exhibits and inform the Court if they cannot agree on their admissibility in light of this Order. The motion is granted in part and denied in part.

### G. Amended Motion In Limine Regarding Documents Disclosed After the Conclusion of Discovery[89]

On October 11, 2010, Gildea sought a continuance indicating that she had discovered new evidence casting doubt on the nature of the Ainsworth / McLendon relationship. During an emergency status conference on October 12, Gildea's counsel stated that Gildea would withdraw objection to Ainsworth's dilatory production in light of Gildea's desire to rely upon her newly discovered and belatedly produced evidence. The Court therefore denies this motion as having been withdrawn.

IT IS, THEREFORE, ORDERED that the motion docketed at 73 is GRANTED; the motion docketed at 70 is DENIED; motions docketed at 69, 71, 72, 74, are GRANTED IN PART AND DENIED IN PART; and the motion docketed at 89 was denied having been withdrawn.

**SO ORDERED AND ADJUDGED** this the 12th day of October, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE